**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**VALDOSTA DIVISION**

AMY JO FILLMORE,          :
                                 :
           Plaintiff,        :
                                 :
        VS.                :
                                 :    **7 : 11-CV-52 (HL)**
MICHAEL J. ASTRUE,      :
Commissioner of Social Security,
                                 :
          Defendant.     :

---

## RECOMMENDATION

The Plaintiff filed this Social Security appeal on April 22, 2011, challenging the Commissioner's final decision denying her application for disability benefits, finding her not disabled within the meaning of the Social Security Act and Regulations. Jurisdiction arises under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the

[Commissioner's] decision, we must affirm if the decision is supported by substantial evidence."
*Bloodsworth*, 703 F.2d at 1239.   "In contrast, the [Commissioner's] conclusions of law are not presumed
valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with
sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal."
*Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step
sequential evaluation process.   20 C.F.R. ▪ 404.1520.   In Step One, the Commissioner determines
whether the claimant is working.   In Step Two, the Commissioner determines whether a claimant
suffers from a severe impairment which significantly limits his ability to carry out basic work activities.
At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed
impairment in Appendix 1 of Part 404 of the regulations.   At Step Four, the Commissioner determines
whether the claimant's residual functional capacity will allow a return to past relevant work.   Finally, at
Step Five, the Commissioner determines whether the claimant's residual functional capacity, age,
education, and work experience allow an adjustment to other work.

### *Administrative Proceedings*

The Plaintiff filed applications for Supplemental Security Income and disability insurance benefits
in April 2008, with a protective filing date of March 25, 2008.   (T – 134-145).   Her claims were denied
initially and upon reconsideration.   (T – 56-59).   A hearing was held before an ALJ in November 2009.
(T -29-54).   The ALJ denied Plaintiff's claim in a decision dated February 8, 2010.   (T-12-28).   The
Appeals Council denied review on February 22, 2011, making the ALJ's February 2010 decision the final
decision of the Commissioner.   (T -1-5).

### *Statement of Facts and Evidence*

The Plaintiff was thirty-six (36) years of age at the time of the ALJ's decision.   (T -12).   She

2

earned a GED and has past relevant work experience as a cashier, apartment manager, and waitress.
(T -34-37).   Plaintiff asserts that she became unable to work as of May 18, 2007 due to bipolar
disorder, attention deficit hyperactivity disorder, and panic attacks.   (T - 181).   The ALJ found that
the Plaintiff suffered from severe impairments in the form of "bipolar disorder vs. major depressive
disorder without psychosis; and personality disorder with passive depressive and passive dependent
features".   (T – 17).   The ALJ concluded that the Plaintiff was not disabled, as she could perform
work at all exertional levels with certain restrictions and could return to her past relevant work as a
"cashier/checker".   (T – 19-23).

## DISCUSSION

### *Treating and consulting physicians= opinions*

The Plaintiff argues that the ALJ improperly discounted the opinions of her treating and
consultative physicians Dr. Beaty, Dr. Wager, and Dr. Willers.   Pursuant to 20 C.F.R. '
404.1527(e)(2), the Commissioner will Aconsider opinions from treating and examining sources on
issues such as . . . your residual functional capacity . . . [although] the final responsibility for deciding
these issues is reserved to the Commissioner.@   AA statement by a medical source that you are
>disabled= or >unable to work= does not mean that we will determine that you are disabled.@  20 C.F.R.
' 404.1527(e)(1).   Good cause to discount the opinion of a physician has been found to exist Awhere
the doctor=s opinion was not bolstered by the evidence, or where the evidence supported a contrary
finding.   We have also found good cause where the doctors= opinions were conclusory or inconsistent
with their own medical records.@  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (internal
citations omitted).   As the *Lewis* court noted, A[w]e are concerned here with the doctors= evaluations
of [the plaintiff=s] condition and the medical consequences thereof, not their opinions of the legal

3

consequences of [her] condition.❷*Id.*

The Plaintiff asserts that Dr. Beaty and Dr. Wager, treating physicians, found that Plaintiff's "ability to perform most work-related mental functions . . .   was poor" and that "[s]uch limitations would preclude all work."   (Doc. 13, ¶4A).   The Plaintiff argues that the ALJ erred in giving little weight to the opinions of these physicians, inasmuch as their opinions relied on the Plaintiff's treatment records and included the physicians' treatment of the Plaintiff.   The Plaintiff also points out that the opinions issued by Dr. Beaty and Dr. Wager are consistent with the conclusions of examining physician Dr. Willers.

The ALJ reviewed and discussed the opinions and treatment issued by Dr. Beaty, Dr. Wager, and Dr. Willers, but concluded as follows:

> Relatively little weight is afforded to John F. Beaty, M.D., claimant's treating psychiatrist, and Michael W. Wager, Ph.D., claimant's treating psychologist, when they concluded in the November 2009 "Medical Source Statement Of Ability To Do Work-Related-Activities (Mental)" form and "Psychiatric Review Technique" form that the claimant is unable to pursue gainful employment, as their opinions are completely contradicted by their own treatment records which consistently rate claimant with Global Assessment of Functioning Scale scores of 60 to 65, which scores are totally inconsistent with the degree of limitation reported in these mental evaluation forms.

> Relatively no weight is afforded to the opinions expressed by Karl R. Willers, Ph.D., the consulting examining psychologist, in the October 13, 2009 "Medical Source Statement Of Ability To Do Work-Related-Activities (Mental)" form, because they are not consistent with the treatment records when viewed as a whole.

(T – 21-22) (internal citations omitted).

A review of the opinions issued by these physicians and the ALJ's decision herein reveals that the ALJ's decision to discount the physicians' opinions to the extent that they dictated a finding of disability is supported by substantial evidence.   The ALJ provided specific reasons for discounting

the opinions of limitation issued by these physicians, reasons which are supported by the objective medical record.   Records reflect that the Plaintiff began treatment at the Georgia Pines Mental Health Center in 2006, reporting depression and past substance abuse, with a recent charge of drug possession.   (T – 491, 501).   Dr. Beaty's limited treatment notes do not support the level of disability he reflects in his 2009 assessment of Plaintiff's abilities, and this assessment conflicted with other treatment records, the Plaintiff's own statements as to her daily activities, and assessments by State agency physicians.   (T – 490-507, 568-570, 576-577).   Dr. Beaty's treatment notes primarily reflect Plaintiff's complaints, consisting primarily of depression and past drug abuse, and show that her condition improved with treatment and over time.   (T –568-570).

Dr. Wager completed a review of Plaintiff's mental condition in 2009, but the objective medical record does not contain any actual treatment notes from Dr. Wager, and his assessment appears to rely entirely on the treatment provided by other staff members.   (T – 572-575).   Dr. Willers also completed a review of Plaintiff's mental condition in 2009, but this review does not reference any treatment notes or objective findings and is inconsistent with the objective medical record, and as such was accorded no weight by the ALJ.   (T - 486-87).   The ALJ provided specific and adequate reasons to discount the opinions of physicians Beaty, Wager, and Willers and the ALJ's findings in this regard are supported by substantial evidence.

*Credibility determination*

The Plaintiff also asserts that the ALJ erred in making a credibility finding, in that he failed to provide reasons supported by substantial evidence to discount Plaintiff's credibility and the credibility of Plaintiff's mother.

The ALJ found that:

> the claimant's medically determinable impairments could reasonably be

5

expected to cause the alleged symptoms; however, ***the claimant's
statements concerning the intensity, persistence and limiting effects
of these symptoms are not credible to the extent they are inconsistent
with the above residual functional capacity assessment***.

(T – 21) (emphasis in original).

The ALJ detailed conflicting evidence from the Plaintiff's treatment history, and further found that:

> [t]he claimant's mother has not only the usual familial interest in her
> claim but also a financial one since she has helped support her for years.
> Although lay persons can certainly offer opinions on another's medical
> condition and functional ability, their opinions are far less persuasive on
> those same issues than the medical evidence and opinions relied on
> herein, which is also offered without prejudice in the claimant's favor of
> family.
>
> All the aforementioned factors are inconsistent with the alleged
> incapacitating or debilitating condition at any time since the claimant's
> alleged onset date.   As such, the undersigned does not find that the
> claimant's statements are sufficiently credible to warrant the
> establishment of more restrictive limitations.   Rather, the undersigned
> reiterates the determination that the claimant remains mentally and
> physically capable of performing work activity as indicated above.

(T – 22).

The Court finds that the ALJ thoroughly considered and evaluated the record and the Plaintiff's

subjective complaints, and properly provided sufficient reasons for discrediting Plaintiff's testimony.

The ALJ looked to the conflicts between the objective medical record and Plaintiff's subjective

complaints in finding that Plaintiff's subjective accounts were not entirely credible.   The record

supports the ALJ's findings that the objective medical record and Plaintiff's daily activities conflict

with Plaintiff's allegation of disabling mental limitation.   As noted by the Commissioner, the

Plaintiff's allegations of disabling limitations conflicted with her mental health treatment notes as well

as with her own testimony of daily activities, including interactions at social functions for her

daughter, interactions with a boyfriend, and daily chores at home.   The ALJ explicitly considered the

Plaintiff's mother's testimony, which was similar to Plaintiff's testimony, and relied on the recognition that lay testimony is less persuasive than medical source opinions to discount the mother's testimony.   (T – 22).   The ALJ enjoys "wide latitude" in evaluating the weight of the evidence, particularly the credibility of witnesses.   *Owens v. Heckler*, 748 F.2d 1511, 1514 (11th Cir. 1984). "When deciding the case, it is the ALJ's duty to weigh the evidence and testimony, to resolve the conflicts in the evidence and testimony, and determine whether [the plaintiff] with [her] RFC can return to [her] past relevant work."   *Battle v. Astrue*, 243 Fed.Appx. 514, 523 (11th Cir. 2007).   The Court finds that the ALJ's conclusions regarding Plaintiff's credibility were properly reached and supported by substantial evidence.

## *Conclusion*

Inasmuch as the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of ▪ 405(g).   Pursuant to 28 U.S.C. ▪ 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED**, this 25th day of June, 2012.

**S/   *THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**